**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| MICHAEL G. BESECKER, | : | |
| Plaintiff, | : | |
| | | Case No. 3:07CV0310 |
| vs. | : | |
| | | District Judge Walter H. Rice |
| MICHAEL J. ASTRUE, | : | Magistrate Judge Sharon L. Ovington |
| Commissioner of the Social | | |
| Security Administration, | : | |
| Defendant. | : | |

# REPORT AND RECOMMENDATIONS[1]

## I.  INTRODUCTION

Plaintiff Michael G. Besecker suffers from "atrial fibrillation, sleep apnea, hypertension, obesity, and depression (and the symptoms therefrom, weakness, shortness of breath, and chest, back and leg pain)...." (Doc. # 9 at 1; *see* Tr. 115).  In November 2001 he sought financial assistance from the Social Security Administration by applying for Disability Insurance Benefits (DIB). (Tr. 105-07). He claimed a disability onset date of November 23, 2001. *Id*.

After initial administrative denials of his DIB application, Administrative Law Judge (ALJ) Melvin A. Padilla held a hearing, during which Plaintiff testified. (Tr. 454-79).  ALJ Padilla issued a written decision concluding in part that Plaintiff was not under

---

[1] Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

a "disability" within the meaning of the Social Security Act until he turned age fifty-five. (Tr. 65-78). The ALJ's non-disability determination (before age fifty-five) and the resulting denial in part of Plaintiff's DIB application became the final decision of the Social Security Administration. Such final decisions are subject to judicial review, *see* 42 U.S.C. §405(g), which Plaintiff is now due.

This case is before the Court upon Plaintiff's Statement of Specific Errors (Doc. #9), the Commissioner's Memorandum in Opposition (Doc. #10), Plaintiff's Reply (Doc. #11), the administrative record, and the record as a whole.

Plaintiff seeks a reversal of the ALJ's non-disability decision and a remand to the Social Security Administration for payment of DIB from November 23, 2001, the date of his claimed disability onset. Plaintiff seeks, in the alternative, a remand for reconsideration of whether Plaintiff was under a disability before age fifty-five. If remand for reconsideration is warranted, Plaintiff further seeks an Order requiring the Commissioner to assign the matter to a different ALJ.

The Commissioner seeks an Order affirming the ALJ's decision.

## II.  PLAINTIFF AND HIS TESTIMONY

Plaintiff's age on the date his claimed disability placed him in the category of a "person closely approaching advanced age" within the meaning of the Commissioner's Regulations. *See* 20 C.F.R. §404.1563(d). Since August 2006, his age placed him in the category of a "person of advanced age" for purposes of resolving his DIB application.

*See* 20 C.F.R. §1563(e). Plaintiff has a high school education (Tr. 121) and has worked as an car salesman, a store manager, and a glass installer. (Tr. 134-37, 479).

Plaintiff met the insured-status requirements for purposes of DIB eligibility on November 23, 2001 (his claimed disability onset date) through October 24, 2006 (the date of the ALJ's Decision). *See* Tr. 77. His DIB application therefore presented the Social Security Administration with the issue of whether he was under a disability from November 23, 2001 through October 24, 2006.

At the time of the ALJ's hearing Plaintiff worked part-time as a bus driver, about two hours per day, five days per week. (Tr. 469). ALJ Padilla recognized that this part-time work did not constitute substantial gainful activity. (Tr. 77).

During the administrative hearing, ALJ Padilla asked Plaintiff why he is unable to work on a full-time basis. Plaintiff testified, "Because of my heart condition. I have no strength anymore. Also, I have asthma and those breathing incapabilities, I guess...." (Tr. 459). He explained that he has an irregular heartbeat, and when it "acts up" he experiences shortness of breath (Tr. 460). Once a week he uses an inhaler to help him breath. (Tr. 460-61).

Plaintiff also has pain in his back and legs, and he has hypertension, which he treats with prescription medication (Toprol, Vilteasen (phonetic), Accupril) and a low-salt diet. (Tr. 460, 462-65). He also suffers from depression and has difficulty concentrating and being around others. (Tr. 460, 462-64). He cries everyday but at the time of the ALJ's hearing, he no longer was seeing his therapist (Dr. Boerger) due to lack of money.

(Tr. 464).

Plaintiff tries to go out everyday; he visits his mother and father, or they visit him. (Tr. 463).  He does not sleep many hours because he usually wakes up every couple of hours and has trouble falling back asleep.  *Id*.  During the day, he rests and sometimes sleeps for 2 or 3 hours during any single 8-hour period.  (Tr. 471).  When he attempts to do things, he is unable to be active for more than 10-to-15 minutes due to shortness of breath and because his "heart beats too much."  (Tr. 471-72).  He emphasized, "It just wears me down."  (Tr. 472).

When Plaintiff is sitting, he must prop up one or both of his legs to take pressure off his back. (Tr. 473).  He must prop his legs up 70 or 80 percent of the time he is sitting.  *Id*.  Raising his legs while sitting also helps relieve the swelling in his left leg and his ankles.  (Tr. 475).  The swelling prevents him from moving around very much.  *Id*.

Plaintiff was 5 feet 7½ inches tall and weighed 260 pounds at the time of the ALJ's hearing.  (Tr. 470).

Plaintiff testified that he can walk for 15 minutes before he needs a break; he can stand for 5-to-10 minutes; he cannot sit for too long – one-half hour before needing to stand and move around; he can lift about 10 pounds but not repetitively; he gets short of breath upon climbing stairs; he seldom cooks at home; he does not wash dishes, he seldom exercises; he runs the sweeper once in a while but must rest between rooms; he helps with the laundry, goes shopping, makes his bed, and goes out to eat; he watches television but has difficulty concentrating; he likes to fish; and although he mows the

lawn, it takes him over 3 hours when in the past it only took him 45 minutes. (Tr. 465-70, 476-77).

### III. ADMINISTRATIVE REVIEW

#### A. "Disability" Defined And The ALJ's Sequential Evaluation

The term "disability" as defined by the Social Security Act carries a specialized meaning of limited scope. Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are "medically determinable" and severe enough to prevent the claimant (1) from performing his or her past job, and (2) from engaging in "substantial gainful activity" that is available in the regional or national economies.[2] *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

Social Security Regulations require ALJs to resolve a disability claim through a five-Step sequential evaluation of the evidence. *See* 20 C.F.R. §404.1520(a)(4). Although a dispositive finding at any Step terminates the ALJ's review, *see also Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review answers five questions:

1. Is the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

---

[2] Impairments must also be either expected to cause death or last twelve months or longer. *See* 42 U.S.C. §423(d)(1)(A); *see also Bowen*, 476 U.S. at 469-70.

>   4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
>
>   5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §404.1520(a)(4); *see also Colvin*, 475 F.3d at 730; *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

### B. The ALJ's Decision

At Step 2 of the sequential evaluation, the ALJ concluded that has the following severe impairments: "cardiomyopathy with chronic controlled rate atrial fibrillation, and depression." (Tr. 77). The ALJ found at Step 3 that Plaintiff did not have an impairment or combination of impairments that met or equaled the criteria of a listing-level impairment. (Tr. 77).

At Step 4 the ALJ assessed Plaintiff's Residual Functional Capacity as follows:

> The claimant is capable of performing the basic exertional requirements of light work, as such work is defined for Social Security purposes, if he ... is allowed to alternate positions as needed, is limited to three hours of standing and walking in an eight hour day, is restricted from work on ladders, scaffolds, or at heights, is limited to occasional kneeling, crouching, and crawling, is restricted from balancing or stooping, and is limited to low stress jobs, without production quotas or fast-paced work.

(Tr. 77).[3] Using this assessment, the ALJ found that Plaintiff could not perform his past relevant work as a glass installer or auto sales person. (Tr. 77).

---

[3] Under the Regulations, "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds...." 20 C.F.R. §404.1567(b).

The above findings, together with Plaintiff's age and vocational abilities, led the ALJ to conclude that Plaintiff was under a disability beginning on August 21, 2006, but not before. (Tr. 77-78).

## IV. JUDICIAL REVIEW

Judicial review determines whether substantial evidence in the administrative record supports the ALJ's factual findings. *Bowen v. Comm'r. of Soc. Sec.*, 478 F3d 742, 745-46 (6th Cir. 2007). "Substantial evidence is defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Bowen*, 478 F3d at 746 (citing in part *Richardson v. Perales*, 402 U.S. 389, 401 (1977)). It consists of "more than a scintilla of evidence but less than a preponderance..." *Rogers v. Comm'r. of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

Judicial review for substantial evidence is deferential, not *de novo*. *See Cruse v. Commissioner of Social Sec*. 502 F.3d 532, 540 (6th Cir. 2007); *see also Cutlip v. Secretary of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). An ALJ's factual findings must be upheld "as long as they are supported by substantial evidence." *Rogers*, 486 F.3d at 241 (citing *Her*, 203 F.3d at 389-90). Once substantial supporting evidence is found in the administrative record, courts do not consider whether they agree or disagree with the ALJ's findings or whether the administrative record contains contrary evidence. *Rogers*, 486 F.3d at 241; *see Her v. Comm'r. of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

Still, substantial evidence is not the analytical ending point. Judicial review

further considers whether the ALJ "applied the correct legal criteria." *Bowen*, 478 F.3d at 746. If the ALJ does not, the decision may not be upheld even if the findings are supported by substantial evidence. *See id.* For example, a decision will not be upheld where the ALJ failed to apply mandatory procedural rules and legal criteria established by the Commissioner's Regulations and where that failure prejudices a claimant on the merits or deprives the claimant of a substantial right. *See Bowen*, 478 F.3d at 746 (and cases cited therein).

## V. DISCUSSION

Plaintiff contends that the ALJ erred by failing to consider his obesity and the compounding effect it has upon his other medical conditions as required by Social Security Rulings 00-3p and 02-01p. Plaintiff asserts, "The medical evidence was uncontroverted that Mr. Besecker was obese and has been since his ... [alleged disability onset date]. Each and every medical source that considered the issue opined that Mr. Besecker was obese. The state agency reviewer opined that Mr. Besecker was obese ... (Tr. 241)...." (Doc. #9 at 9-10).

The Commissioner does not directly acknowledge or dispute that Plaintiff suffers from obesity. *See* Doc. #10 at 12. The Commissioner instead argues, "Simply being obese is not sufficient for a finding of disability. Rather it is the impact of a condition on Plaintiff's ability to work that is important." *Id.* (citing *Young v. Sec'y of Health & Human Servs.*, 964 F.2d 146, 151 (6th Cir. 1990)). The Commissioner emphasizes that

none of the medical sources who recognized that Plaintiff suffered from obesity "actually opined that weight caused a problem or exacerbated his underlying conditions." (Doc. #10 13).

The ALJ's decision briefly mentions obesity only in the summary of the medical evidence. *See* Tr. 67-71. The ALJ did not address obesity, or the combined impact of Plaintiff's obesity and other impairment, has at any Step of the sequential evaluation. *See* Tr. 71-75. The ALJ did not consider Plaintiff's obesity at Step 2, when identifying his severe impairments; at Step 3, when determining whether the combination of his severe impairments meets or equals an impairment in the Listings; and at Step 4, when assessing his Residual Functional Capacity. *See* Tr. 71-75.

Although the Commissioner's Regulations no longer contain a separate Listing for obesity, *see Combs v. Commissioner of Social Security*, 459 F.3d 640, 643-44 (6th Cir. 2006), the Listings contain the following mandate: "when determining whether an individual with obesity has a listing-level impairment or combination of impairments, and when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity, <u>adjudicator's must consider any additional and cumulative effects of obesity</u>." Listing 1.00Q (emphasis added), 20 C.F.R. Part 404, Subpart P, Appendix 1. The Regulations, moreover, "require the agency to consider the combined effect of all of the claimant's ailments, regardless of whether any such impairment, if considered separately, would be of sufficient severity.'" *Clifford v. Apfel*, 227 F.3d 863, 873 (7th Cir. 2000)(discussing and quoting in part 20 C.F.R.

§404.1523).

Social Security Ruling 02-01p, 2000 WL 628049, reinforces Regulation's mandate regarding obesity as follows: Step 2 – "we will do an individualized assessment of the impact of obesity on an individual's functioning when deciding whether the impairment is severe...," *id*. at *4; Step 3 – "Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment.  We will evaluate each case based on the information in the case record...," *id*. at *5; Step 4 – "The combined effects of obesity with other impairments may be greater than might be expected without obesity....  As with any other impairment, we will explain how we reached our conclusions on whether obesity caused any physical or mental limitation...," *id*. at *6-7.

It was not harmless error for the ALJ to ignore or overlook Plaintiff's obesity because his treating physician, Dr. Landes, based his October 2004 opinions on the combination of Plaintiff's atrial fibrillation, chronic low blood pressure, degenerative joint disease in his knees, and obesity.  *See* Tr. 306.  It is undisputed, moreover, that Plaintiff suffers from atrial fibrillation and has measured low left ventricular ejection fractions on several occasions, the lowest being described in a physician's report as "[l]eft ventricular ejection fraction is severely reduced at 27%."  (Tr. 280).

The ALJ, moreover, found at Step 2 that Plaintiff suffers from the severe impairment of depression.  Social Security Ruling 02-01p recognizes, "Obesity may also cause or contribute to mental impairments such as depression."  2000 WL 628049 at *3.

The repeated references to Plaintiff's obesity in the record, including the opinions of several medical sources, should have alerted the ALJ to consider Plaintiff's obesity and its combined impact with his other impairments at Steps 2, 3, and 4 of the sequential evaluation. *See* Tr. 180, 241, 306, 321, 352, 388. For all the above reasons, his failure to do so did not constitute harmless error. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 546 (6th Cir. 2004)("A procedural error is not rendered harmless simply because [the aggrieved party] appears to have had little chance of success on the merits anyway.")(brackets in *Wilson*); *see also Clifford*, 227 F.3d at 873; Soc. Sec. Ruling 02-01p, 2000 WL 628049.

Accordingly, Plaintiff's challenges to the ALJ's failure to consider, and explain his consideration, of Plaintiff's obesity are well taken. In light of the above review, and the resulting need for remand of this case, *see infra*, §VI, further analysis of Plaintiff's remaining contentions is unwarranted.

## VI.   REMAND IS WARRANTED

If the ALJ failed to apply the correct legal standards or his factual conclusions are not supported by substantial evidence, the Court must decide whether to remand the case for rehearing or to reverse and order an award of benefits. Under Sentence Four of 42 U.S.C. §405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Remand is appropriate if the Commissioner applied an erroneous

principle of law, failed to consider certain evidence, failed to consider the combined effect of impairments, or failed to make a credibility finding. *Faucher v. Secretary of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case, because the evidence of disability is not overwhelming, and because the evidence of a disability is not strong while contrary evidence is weak. *See Faucher*, 17 F.3d at 176.

Plaintiff, however, is entitled to an Order remanding this case to the Social Security Administration pursuant to Sentence Four of §405(g) due to problems set forth above. On remand, the ALJ should be directed to re-evaluate Plaintiff's disability claims under the five-step sequential evaluation mandated by the Regulations and case law – including, but not limited, to an evaluation of Plaintiff's obesity, in combination with his other impairments as required by the Commissioner's Regulations and Ruling 02-01p, and a re-assessment of Plaintiff's impairments at Steps 2, 3, 4 and, if necessary Step 5, of the sequential evaluation procedure.

Lastly, because the administrative record in this case does not reveal that ALJ Padilla holds an actual bias against Plaintiff or his counsel, an Order requiring the Commissioner to reassign this case to a different ALJ is not warranted. *See Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505, 509 n.2 (6th Cir. 1991).

Accordingly, the case should be remanded to the Commissioner and the ALJ for further proceedings consistent with this Report and Recommendations.

## IT IS THEREFORE RECOMMENDED THAT:

1. The Commissioner's non-disability finding be vacated;

2. No finding be made as to whether Plaintiff Michael G. Besecker was under a "disability" within the meaning of the Social Security Act;

3. This case be remanded to the Commissioner and the Administrative Law Judge under Sentence Four of 42 U.S.C. §405(g) for further consideration consistent with this Report; and

4. The case be terminated on the docket of this Court.


August 11, 2008

      s/Sharon L. Ovington
Sharon L. Ovington
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by mail. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).